IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:17-cv-01034-JTN-ESC |
| | ) | |
| MICHIGAN STATE UNIVERSITY; | ) | |
| MICHIGAN STATE UNIVERSITY BOARD | ) | |
| OF TRUSTEES; LOU ANNA SIMON in her | ) | |
| Individual and Official Capacities; | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

AND NOW, on this _____ day of _____, 2018, after consideration of

MSU's Motion to Dismiss, and any Response(s) thereto, IT IS HEREBY ORDERED that the

Motion is GRANTED.  Plaintiff's Complaint is dismissed with prejudice.


BY THE COURT:


_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:17-cv-01034-JTN-ESC |
| | ) | |
| MICHIGAN STATE UNIVERSITY; | ) | |
| MICHIGAN STATE UNIVERSITY BOARD | ) | |
| OF TRUSTEES; LOU ANNA SIMON in her | ) | |
| Individual and Official Capacities; | ) | |
| | ) | |
| Defendants. | ) | |

## MICHIGAN STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Michigan State University ("MSU") hereby moves the Court to dismiss Plaintiff's Complaint for the reasons set forth in the accompanying Memorandum of Law. MSU's counsel asked Plaintiff's counsel by phone on June 19, 2018 whether Plaintiff would concur in the motion, and Plaintiff's counsel responded that they do not concur.

MSU requests oral argument on this Motion pursuant to Local Rule 7.2(d).

Date:  July 10, 2018

Respectfully submitted,

s/ Michael E. Baughman

_____

Michael E. Baughman, Esq.
Attorney I.D. No. 78690
PEPPER HAMILTON LLP
Kristin H. Jones, Esq.
Attorney I.D. No. 85725
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000
baughmam@pepperlaw.com
joneskh@pepperlaw.com

Matthew J. Lund, Esq. (P48632)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075
(248) 359-7370
lundm@pepperlaw.com

*Attorneys for Defendant Michigan State Univ.*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:17-cv-01034-JTN-ESC |
| | ) | |
| MICHIGAN STATE UNIVERSITY; | ) | |
| MICHIGAN STATE UNIVERSITY BOARD | ) | **ORAL ARGUMENT REQUESTED** |
| OF TRUSTEES; LOU ANNA SIMON in her | ) | |
| Individual and Official Capacities; | ) | |
| | ) | |
| Defendants. | ) | |

**<u>BRIEF IN SUPPORT OF MICHIGAN STATE UNIVERSITY'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL ALLEGATIONS PLEADED IN THE COMPLAINT .................................. 2

III.   LEGAL STANDARD FOR A MOTION TO DISMISS ............................................ 4

IV.   ARGUMENT ............................................................................................... 5

      A.     The Court Should Dismiss The Complaint Because Plaintiff Does Not
            State a Title IX Claim For "Deliberate Indifference" ................................. 5

            1.     Title IX Provides a Damages Claim Only for Intentional Gender
                    Discrimination:  An Institutional Decision Not to Address Known,
                    Ongoing Harassment.................................................................... 5

                  a.     *Plaintiff Must Plead and Prove that the Defendant was
                          Deliberately Indifferent*................................................ 7

                  b.     *Plaintiff Must Plead and Prove that the School's Deliberate
                          Indifference Caused Her to Suffer Additional Severe and
                          Pervasive Harassment* ................................................. 9

            2.     Plaintiff Pleads No Facts Showing that MSU's Response to Her
                      Claims Amounts to Deliberate Indifference Which Caused Her to
                      Suffer Additional Harassment.................................................... 14

      B.     Plaintiff Pleads No Facts Plausibly Suggesting that MSU Engaged in a
            Custom or Practice of Gender Discrimination...................................... 17

V.     RELIEF ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Sandoval*, 532 U.S. 275 (2001)................................................................19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................5

*Blue v. District of Columbia*, 811 F.3d 14 (D.C. Cir. 2015)......................................12

*Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725 (N.D. Ill. 2017)...............19

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).................................. *passim*

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir. 1996) ...................................8

*Doe v. Denison Univ.*, No. 2:16-cv-143,
   2017 U.S. Dist. LEXIS 53168 (S.D. Ohio Mar. 30, 2017)......................................17

*Doe v. Rector & Visitors of George Mason Univ.*,
   132 F. Supp. 3d 712 (E.D. Va. 2015) .....................................................................19

*Doe v. Univ. of Ala. in Huntsville*, 177 F. Supp. 3d 1380 (N.D. Ala. 2015) ..............18

*Doe v. Willits Unified Sch. Dist.*, 473 F. App'x 775 (9th Cir. 2012).............................7

*Escue v. N. Okla. Coll.*, 450 F.3d 1146 (10th Cir. 2006)............................................12

*Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627 (W.D. Va. 2016) ...............8, 9, 16

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ...........1, 5, 6, 7, 8, 15, 16

*Ha v. Northwestern Univ.*, No. 14-cv-00895,
   2014 U.S. Dist. LEXIS 160046 (N.D. Ill. Nov. 13, 2014)................................13, 14

*Hazley v. Monroe County Bd. of Ed.*, No. 08-0142-WS-B,
   2008 U.S. Dist. LEXIS 102283 (S.D. Ala. Dec. 17, 2008) .....................................15

*K.C. v. Cty. Schs.*, No. 5:16-CV-00136-TBR,
   2018 U.S. Dist. LEXIS 15858 (W.D. Ky. Jan. 29, 2018).........................................11

*K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017).....................................11

*Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO,
   2016 U.S. Dist. LEXIS 98949 (N.D. Cal. July 28, 2016)...........................................8

Page(s)

*KF v. Monroe Woodbury Central Sch. Dist.*, No. 12-CV-2200 (ER),
    2012 U.S. Dist. LEXIS 60341 (S.D.N.Y. Apr. 30, 2012)......................................................10

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*, No. 1:15-cv-1191,
    2017 U.S. Dist. LEXIS 216502 (W.D. Mich. Nov. 2, 2017)...................................................11

*Lopez v. Regents of the Univ. of Cal.*, No. C-13-2811 EMC,
    2013 U.S. Dist. LEXIS 173228 (N.D. Cal. Dec. 10, 2013).....................................................12

*M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775 (6th Cir. 2017) ..................10, 11, 14

*M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB,
    2017 U.S. Dist. LEXIS 11504 (W.D. Ky. Jan. 27, 2017)................................................13, 14

*Michigan St. Univ. Bd. of Trustees v. Kollaritsch, et al.*, No. 18-1715,
    2018 U.S. App. LEXIS 17379 (6th Cir. June 25, 2018).........................................................11

*Montoya v. N.M. Inst. of Mining & Tech. Bd. of Regents*, No. 2:16-cv-00386-
    MCA-SMV, 2017 U.S. Dist. LEXIS 40641 (D.N.M. Mar. 21, 2017)....................................12

*Moore v. Murray State Univ.*, No. 5:12-CV-00178,
    2013 U.S. Dist. LEXIS 33768 (W.D. Ky. Mar. 12, 2013) ...............................................10, 12

*Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345 (S.D.N.Y. 2017) .........................................19

*O'Hara v. Colonial Sch. Dist.*, No. 99 CV 399,
    2002 U.S. Dist. LEXIS 12153 (E.D. Pa. Mar. 25, 2002).......................................................13

*Oden v. Northern Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006).............................................8, 15

*Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL),
    2017 U.S. Dist. LEXIS 94510 (W.D. Tex. June 20, 2017) ....................................................19

*Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012).........................................11, 14

*Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000)...........................................12

*Romero v. City of New York*, 839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...........................................15

*Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648 (5th Cir. 1997) .....................................10

*Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951 (N.D. Okla. Apr. 15, 2016)....................................16

*Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio 2015) ......................................................18

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
    647 F.3d 156 (5th Cir. 2011) ..............................................................................................8, 16

*Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052 (D.N.M. 2010) ........................10

**Page(s)**

*Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463,
    2018 U.S. Dist. LEXIS 36350 (S.D. Ohio Mar. 6, 2018)......................................................17

*Staehling v. Metro. Gov't*, No. 3:07-0797,
    2008 U.S. Dist. LEXIS 91519 (M.D. Tenn. Sept. 12, 2008)....................................................8

*Stiles v. Grainger Cty.*, 819 F.3d 834 (6th Cir. 2016)...........................................................11, 14

*Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816 (M.D. Tenn. 2014) .......................................12

*Tsuruta v. Augustana Univ.*, No. 4:15-CV-04150-KES,
    2015 U.S. Dist. LEXIS 136796 (D.S.D. Oct. 7, 2015)...........................................................19

*Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) ................................9, 16

*Williams v. Bd. of Regents of U. System of Georgia*,
    477 F.3d 1282 (11th Cir. 2007) .............................................................................................12


STATUTES

*20 U.S.C. § 1681(a)* ...............................................................................................................5

**<u>CONCISE STATEMENT OF REASONS SUPPORTING POSITION</u>**

The Complaint asserts claims for gender discrimination under Title IX of the Educational Amendments of 1972.  The Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff's allegations of discrimination do not demonstrate intentional gender discrimination under Title IX as required by *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).  Plaintiff concedes that defendant Michigan State University ("MSU") took action in response to her allegation of sexual misconduct, ultimately finding her alleged assailant responsible and disciplining him.  Plaintiff's Complaint makes clear she never saw her alleged assailant again after making her report to MSU.  Because Plaintiff cannot establish that MSU was deliberately indifferent to her claim or that she suffered any additional harassment after MSU was put on notice of her claim, the Complaint should be dismissed.

## I.    INTRODUCTION

Plaintiff is a former Michigan State University ("MSU") student.  She claims that in March 2015, she was sexually assaulted by an MSU student, who had graduated and left campus, but was visiting the campus on that day for his NFL "Pro Day."  Plaintiff agrees that MSU investigated her claim, disciplined her assailant, and that she faced no further harassment from her assailant after reporting her assault.  Indeed, she never saw the man again.  Nevertheless, Plaintiff claims that MSU violated Title IX of the Educational Amendments of 1972 ("Title IX"), by taking too long to resolve her complaint and failing to provide her with the particular remedies she desired.

MSU did assist Plaintiff with the effect of her assault pending the outcome of her disciplinary proceeding; thus, the allegations in the Complaint are untrue.  But even accepting the allegations in the Complaint as true, as MSU must for purposes of this Motion, Title IX does not provide a damages claim for negligently handling a student disciplinary claim or for failing to "remedy" sexual harassment committed by others.  In two seminal decisions, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), the Supreme Court held that a Title IX claim for damages is available only upon a showing of intentional gender discrimination, meaning a school's deliberate indifference to known acts of sexual harassment.  Schools are not liable simply because sexual harassment occurs on their campuses, nor is a school required to provide any particular remedy or response when it learns of past acts of harassment by members of its community.  Rather, Title IX permits liability only where a school ***knows*** that there is ***ongoing*** harassment in its programs, and then makes an ***affirmative decision to ignore it***.  Only then can it be said that ***the school*** has subjected the student to harassment.

Plaintiff does not plead facts sufficient to meet this high bar.  MSU took action in response to her report, and Plaintiff does not plead that she was subject to any further harassment after her report, let alone any harassment caused by MSU.  While Plaintiff may disagree with the particulars of MSU's response, *MSU* did not subject Plaintiff to harassment.  It is not liable for allegedly failing to remedy the effects of past harassment committed by someone else.  Therefore, the Court should grant MSU's motion and dismiss the Complaint with prejudice.

## II.    FACTUAL ALLEGATIONS PLEADED IN THE COMPLAINT[1]

Plaintiff alleges that she was assaulted by another MSU student, Keith Mumphery, after inviting him to her dorm room on or around March 17, 2015.  PageID.5 at ¶¶ 23-27.  Mumphery was a former MSU football player, who had graduated in May 2014 and finished his final football season in December 2014.  PageID.9 at ¶ 53.  On the day Plaintiff invited him back to her room, Mumphery was allegedly visiting the campus for his NFL Pro Day.  PageID.4 at ¶ 20.  Plaintiff reported the assault to the MSU Police on March 17, 2015.  PageID.5 at ¶ 28.  On March 18, 2015, Plaintiff reported the assault to MSU's Office for Inclusion and Intercultural Initiatives ("I3"), which was renamed the Office of Institutional Equity ("OIE") in April 2015.  *Id.*

OIE began investigating Plaintiff's report in April 2015 and completed its investigation on September 8, 2015.  PageID.5-6 at ¶¶ 29-30.  OIE originally concluded that Mumphery had not violated MSU's sexual misconduct policy.  PageID.7 at ¶ 40.  But Plaintiff alleges that, in January 22, 2016, OIE reopened her case for further review (PageID.9 at ¶ 49),

---

[1] Although many of the allegations in the Complaint are absolutely untrue, MSU accepts as true, as it must for purposes of this Motion only, the facts as pleaded in the Complaint.  Further, this Motion addresses only Count I of the Complaint asserted against Michigan State University, because Plaintiff agrees that the MSU Board of Trustees and President Simon are no longer defendants and has withdrawn all counts asserted against them.

and that, on March 21, 2016, OIE concluded that Mumphery had violated MSU's sexual

misconduct policy because Plaintiff had not given "consent" as defined under the policy.  *Id.* at ¶

50.[2]  Plaintiff alleges that both she and Mumphery were notified of these findings on or about

March 21, 2016.  *Id.* at ¶¶ 51-52.  Plaintiff alleges that, on June 7, 2016, MSU sanctioned

Mumphery by banning him from re-enrolling at MSU or from entering the MSU campus or

facilities until December 31, 2018.  PageID.9-10 at ¶¶ 53-54.

       Plaintiff does not allege that she ever saw or heard from Mumphery after the

alleged March 2015 assault.  Indeed, she alleges that Mumphery was no longer an MSU student

at the time of the alleged assault, having graduated the prior Spring.  PageID.9 at ¶ 53.  Instead,

Plaintiff takes issue with MSU's alleged failure to provide her with particular remedies to

address the effects of the assault and her fear that she might encounter Mumphery, even though

he no longer was on campus.  Plaintiff alleges – inaccurately – that MSU did not inform her

about or offer her any accommodations or "interim measures" such as academic support, no

contact orders or interim suspensions.  PageID.6 at ¶¶ 31, 36.  Plaintiff further alleges that MSU

did not restrict Mumphery from being on campus pending the investigation.  *Id.* at ¶ 32.  Plaintiff

alleges that Mumphery "periodically" came to the OIE office located in her work building for

interviews during the investigation.  *Id.* at ¶¶ 32-34.  But, again, she does not allege that she ever

saw Mumphery or interacted with him in her work building or at any time after the alleged

assault.

---

[2] The Complaint alleges – inaccurately – that Plaintiff's case was reopened based on a
review by the U.S. Department of Education's Office for Civil Rights ("OCR").  PageID.8 at ¶¶
47-48.  In fact, the change in outcome came after Plaintiff filed a challenge to the original
decision issued by OIE.

Plaintiff alleges that she quit her job because she was scared she might run into Mumphery, and that the effects of her assault caused her grades and sleep to suffer.  PageID.6 at ¶ 35, PageID.7 at ¶ 37.  Plaintiff sought counseling services through MSU's Olin Health Center, but ultimately chose to pursue more comprehensive private counseling services.  PageID.7 at ¶ 38.  Plaintiff alleges that MSU did not give her any information about financial assistance for counseling.  *Id.*

Plaintiff alleges that she went to MSU's Center for People with Disabilities ("RCPD") to obtain a "school visa" because she continued to struggle in school during her sophomore year.  *Id.* ¶¶ 41-42.  She alleges that, after two failed attempts to meet with an RCPD representative as scheduled, she met with an RCPD representative to obtain the visa in March 2016.  PageID.8 at ¶ 43.  According to Plaintiff, she was traumatized by the RCPD meeting because she had to describe her assault in order to provide a basis for requesting the visa.  *Id.* at ¶ 44.

According to Plaintiff, on June 14, 2016, MSU posted a "tweet" on Twitter saying that Mumphery would be attending an MSU-sponsored football camp on June 16, 2016.  *Id.* at ¶ 56 and PageID.20.  Plaintiff also alleges that MSU invited Mumphery to attend a golf outing scheduled for June 17, 2016.  PageID.10 at ¶ 57.  Plaintiff alleges that her friends notified her that Mumphery "had been spotted on campus and around East Lansing" that weekend, and that she called unidentified "campus authorities" but received no information about Mumphery's whereabouts.  PageID.10-11 at ¶ 62.  Again, Plaintiff does not allege that she saw or encountered Mumphery at that, or any other time.

## III.   LEGAL STANDARD FOR A MOTION TO DISMISS

In deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, but it need not accept, without more, legal conclusions masquerading as facts.

-4-

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1947 (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiffs must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

## IV.   ARGUMENT

### A.   The Court Should Dismiss The Complaint Because Plaintiff Does Not State a Title IX Claim For "Deliberate Indifference"

1.   Title IX Provides a Damages Claim Only for Intentional Gender Discrimination:  An Institutional Decision Not to Address Known, Ongoing Harassment.

Title IX provides:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  While the statute does not provide for a civil remedy, the Supreme Court implied a narrow right of action for damages in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).  According to this Supreme Court precedent, in the context of sexual harassment between members of the school's community, a cause of action for damages is available only where the school itself has engaged in intentional gender discrimination, by making an affirmative decision not to address known, ongoing harassment in

its educational programs, thus allowing the harassment to continue.  Title IX does not require a school to provide a particular remedy in response to one student's sexual assault of another student.  Plaintiff's claims here fail because she takes issue with the particular remedies MSU provided her; she does not allege that *MSU* subjected her to further harassment.

In *Gebser*, the Supreme Court considered a Title IX claim premised on a school teacher's sexual relationship with an eighth grade student.  In finding that the school district could not be liable for the teacher's conduct, the Supreme Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290.  "[T]he response must amount to *deliberate indifference* to discrimination. . . .The premise, in other words, is *an official decision by the recipient not to remedy the violation.*" *Id.* (emphasis added).  The Supreme Court declined to impose liability based on principles of *respondeat superior* or constructive notice of the ongoing sexual relationship, *id.* at 285, explaining that any standard lower than deliberate indifference (such as negligence), would create "a risk that the recipient would be liable in damages not for its own official decision but instead for its employee's independent actions." *Id.* at 290-91.  Although the school district in *Gebser* had knowledge of other inappropriate comments by the teacher involved, it could not be liable under Title IX because it did not have actual knowledge of the sexual relationship while it was occurring.  *Id.* at 292.

The next year, in *Davis*, the Supreme Court considered whether a school district could be liable for a fifth grader's continual sexual harassment of another student.  Guided by the principle from *Gebser*, *Davis* affirmed that a private right of action under Title IX is available

only "where the funding recipient engages in ***intentional*** conduct that violates the clear terms of

the statute."  526 U.S. at 641-42 (emphasis added).  Emphasizing the narrowness of the cause of

action, the *Davis* Court held that schools can be liable only for their ***own*** actions that amount to

intentional gender discrimination – meaning (1) "the funding recipient acts with deliberate

indifference to known acts of harassment in its programs or activities," *id.* at 632; (2) the

deliberate indifference of the school "'cause[s] [students to undergo' harassment or 'make[s]

them liable or vulnerable' to it[,]'" *id.* at 645 (quoting Random House Dictionary); and (3) the

harassment caused by the school is "so severe, pervasive, and objectively offensive that it

effectively bars the victim's access to an educational opportunity or benefit" provided by the

school.  *Id.* at 633.

     *Davis* thus makes clear that schools are not required to remedy past harassment,

they are only required to take action to stop known, ongoing harassment:

> The dissent consistently mischaracterizes [the "clearly
> unreasonable"] standard to require funding recipients to "remedy"
> peer harassment. . . . Title IX imposes no such requirements.  On
> the contrary, the recipient must merely respond to known peer
> harassment in a manner that is not clearly unreasonable.

*Davis*, 526 U.S. at 648-49.

     a.    *Plaintiff Must Plead and Prove that the Defendant was
         Deliberately Indifferent*

     Deliberate indifference occurs "only where the [school's] response to the

harassment or lack thereof is ***clearly unreasonable*** in light of the known circumstances."  *Davis*,

526 U.S. at 648 (emphasis added).  In other words, the school's response must be so

unreasonable that one can infer there was "an official decision by the recipient not to remedy"

the harassment.  *Gebser*, 524 U.S. at 290; *see Doe v. Willits Unified Sch. Dist.*, 473 F. App'x

775, 776 (9th Cir. 2012) ("To meet this high standard there must, in essence, be an official

decision not to remedy the violation and this decision must be clearly unreasonable."). "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 508 (6th Cir. 1996).

As such, a school's alleged failure to follow its internal policies and procedures does not rise to the level of deliberate indifference. *See Gebser,* 524 U.S. at 291 (holding that a school's failure to adopt grievance procedures for resolving sexual harassment claims does not itself constitute discrimination under Title IX); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) ("A district's 'failure to comply with [its] regulations . . . does not establish the requisite . . . deliberate indifference.'"); *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 638 (W.D. Va. 2016) ("[A] Title IX defendant's failure to comply with its own policy does not prove deliberate indifference, under clear Supreme Court precedent.").

Similarly, mere delays in a school's disciplinary process do not constitute deliberate indifference. *Oden v. Northern Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (holding that college's nine-month delay in proceedings was not deliberately indifferent, even if it may have been negligent and in violation of school's own policy); *Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO, 2016 U.S. Dist. LEXIS 98949, at *45-46 (N.D. Cal. July 28, 2016) (finding allegations that the university failed to update plaintiff during its investigation and disciplinary process were, at most, "nonactionable negligence, laziness, or carelessness," and not deliberate indifference); *Staehling v. Metro. Gov't*, No. 3:07-0797, 2008 U.S. Dist. LEXIS 91519, at *35 (M.D. Tenn. Sept. 12, 2008) ("While the alleged failure of the school in its follow-

up to the . . . incident may suggest negligence, this is not sufficient to me[e]t the deliberate indifference standard under Title IX.").

        Finally, the *Davis* Court made clear that Title IX does not entitle complainants to make particular remedial demands. The Court admonished the lower courts against second-guessing decisions of school administrators, and stressed that its holding does not require institutions to "purg[e] their schools of actionable peer harassment or that administrators must engage in particular disciplinary action," nor does it require schools to expel every student accused of sexual misconduct. 526 U.S. at 648; *see Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (stating "[v]ictims do not have a right to particular remedial demands" under Title IX); *Facchetti*, 175 F. Supp. 3d at 638 (recognizing "ample authority holding that neither a school's negligence in addressing a sexual assault, nor its failure to provide the remedy wanted by the victim, constitutes deliberate indifference") (citing cases).

        "In an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

        b.     *Plaintiff Must Plead and Prove that the School's Deliberate Indifference Caused Her to Suffer Additional Severe and Pervasive Harassment*

        Even where a school's response to sexual harassment can be found to be "clearly unreasonable," the school cannot be liable unless that clearly unreasonable response causes the Plaintiff to suffer additional harassment. A school is only liable where it "subjects" a student to harassment, meaning that the school's deliberate indifference "effectively 'cause[s]' the discrimination" for which the plaintiff seeks damages. *Davis,* 526 U.S. at 642-43, 644. As one district court in this Circuit has noted, "[t]he relationship between causation and deliberate indifference is vitally important in a student-on-student harassment case . . . [because] plaintiffs

do not seek to recover against the perpetrator of the harassment[;] [r]ather they bring suit against the entity receiving federal funds for its own decision to remain idle . . . ."  *Moore v. Murray State Univ.*, No. 5:12-CV-00178, 2013 U.S. Dist. LEXIS 33768, at *10 (W.D. Ky. Mar. 12, 2013).

A damages claim under Title IX does not exist for failing to remedy the effects of past harassment.  *See KF v. Monroe Woodbury Central Sch. Dist.*, No. 12-CV-2200 (ER), 2012 U.S. Dist. LEXIS 60341, at *30 (S.D.N.Y. Apr. 30, 2012) (denying preliminary injunction under Title IX because school's response was not clearly unreasonable where plaintiff faced no further harassment after making her report and school had no duty to remedy "the psychological effects of the alleged behavior to which she was previously subjected").  It is available only if the school subjects a student to harassment by failing to take actions to stop known, ongoing harassment. *Rosa H. v. San  Elizario Indep. Sch. Dist.*, 106 F.3d 648, 661 (5th Cir. 1997) ("[T]he school district can be liable, if at all, only for the damages caused by its intentional acts of discrimination.  If the conduct has ceased by the time a supervisory employee . . . learns of it, there is no liability in a private suit for the conduct based on some personal failure to take 'proper remedial action' thereafter."); *Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052, 1081 (D.N.M. 2010) (plaintiff must show school "was deliberately indifferent to the ongoing wrongful conduct").

Most courts – including the Sixth Circuit in an unpublished decision – have held that a plaintiff must allege that the institution's acts of deliberate indifference caused them to suffer additional harassment after the school learns of the incident in question.  In *M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775 (6th Cir. 2017), the Sixth Circuit affirmed that a school's alleged failure to remedy a student's fear and emotional trauma stemming from

past harassment is not sufficient to state a claim under Title IX.  *Id.* at 778.  The *M.D.* Court also

acknowledged that the plaintiff had not alleged any further harassment.  *Id.  See also Stiles v.*

*Grainger Cty.*, 819 F.3d 834, 849-851 (6th Cir. 2016) (school liable only for peer on peer

harassment that occurs after school is on notice that its actions to remedy harassment are

ineffectual); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 364 (6th Cir. 2012) (affirming

dismissal of Title IX deliberate indifference claim where "it cannot be said that [defendant's]

own deliberate indifference effectively cause[d] the discrimination") (internal quotation marks

and citations omitted).  As one district court observed, "in nearly every case discussing deliberate

indifference regarding a school's response to reports of harassment, abuse, or discrimination, the

Sixth Circuit's focus has been on whether the school could have or should have done [things]

differently in order to bring the . . . harassment to a ***stop***."  *K.C. v. Cty. Schs.*, No. 5:16-CV-

00136-TBR, 2018 U.S. Dist. LEXIS 15858, at *25 (W.D. Ky. Jan. 29, 2018) (emphasis in

original, internal quotation marks and citation omitted).[3]

Other Courts of Appeals and district courts that have addressed the issue likewise

require plaintiff to plead further harassment.  *See, e.g., K.T. v. Culver-Stockton Coll.,* 865 F.3d

---

[3] This same issue regarding a further harassment requirement was before the court in *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, No. 1:15-cv-1191, 2017 U.S. Dist. LEXIS 216502, at *4 (W.D. Mich. Nov. 2, 2017) (decision on motion to dismiss) and 285 F. Supp. 3d 1028 (W.D. Mich. 2018) (decision granting certification for an interlocutory appeal).  In the latter decision, Judge Maloney acknowledged that the court had allowed some of the plaintiffs' Title IX claims to proceed without allegations of further harassment after the school was put on notice of the conduct.  285 F. Supp. 3d at 1030.  But finding a split in authority over the Title IX pleading standard regarding further harassment, Judge Maloney certified the court's decision on the motion to dismiss for an interlocutory appeal (*id.* at 1032), which the Sixth Circuit recently accepted.  *See Michigan St. Univ. Bd. of Trustees v. Kollaritsch, et al.*, No. 18-1715, 2018 U.S. App. LEXIS 17379 (6th Cir. June 25, 2018) (noting that the District Court's decision in *Kollaritsch* is in "potential conflict" with at least two decisions from the federal courts of appeal).  Given that the dispositive issue in this case is now before the Sixth Circuit, the Court may wish to stay resolution of this motion pending a decision from the Sixth Circuit.

1054, 1058 (8th Cir. 2017) (affirming complaint failed where it "identified no causal nexus between [college's] inaction and [plaintiff's] experiencing sexual harassment"); *Blue v. District of Columbia*, 811 F.3d 14, 21 (D.C. Cir. 2015) (affirming school only liable where it has knowledge of harassment "while the harassment was ongoing"); *Williams v. Bd. of Regents of U. System of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007) ("[A] Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination."); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006) ("Significantly, we note that Ms. Escue does not allege that further sexual harassment occurred as a result of NOC's deliberate indifference"); *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir. 2000) ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment."); *Montoya v. N.M. Inst. of Mining & Tech. Bd. of Regents,* No. 2:16-cv-00386-MCA-SMV, 2017 U.S. Dist. LEXIS 40641, at *17 (D.N.M. Mar. 21, 2017) (finding no deliberate indifference where "perhaps most significantly, the Institute's response did not lead to further incidents of harassment"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis to find defendant's response to plaintiff's sexual harassment report amounted to deliberate indifference."); *Lopez v. Regents of the Univ. of Cal.*, No. C-13-2811 EMC, 2013 U.S. Dist. LEXIS 173228, at *49-50 (N.D. Cal. Dec. 10, 2013) (dismissing Title IX claim for failure to allege that deliberate indifference subjected plaintiff to further discrimination); *Moore*, 2013 U.S. Dist. LEXIS 33768, at *13-14 (finding Title IX failed as a matter of law where, "even if MSU was deliberately indifferent to

[plaintiff], there are no allegations that the indifference caused her to experience further or additional harassment").

And, the harassment **caused by the University** must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Thus, particularly on a campus of nearly 40,000 students, the occasional sightings or encounters with an alleged harasser around campus cannot alone be harassment sufficiently "severe, pervasive, and objectively offensive" for Title IX liability to attach. *See M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, at *21-22 (W.D. Ky. Jan. 27, 2017) (granting summary judgment against Title IX claim that school was liable for its "lack of remedial measures" in response to plaintiff's report that she was suffering from "psychological harm" due to the respondent's "mere presence" on campus); *Ha v. Northwestern Univ.*, No. 14-cv-00895, 2014 U.S. Dist. LEXIS 160046, at *7-8 (N.D. Ill. Nov. 13, 2014) ("[O]ccasional glimpse of [harasser] on the campus" and "claims that knowledge of [harasser's] presence on the campus caused [plaintiff] considerable grief" are not actionable under Title IX); *O'Hara v. Colonial Sch. Dist.*, No. 99 CV 399, 2002 U.S. Dist. LEXIS 12153, at *18 (E.D. Pa. Mar. 25, 2002) ("Plaintiffs allege nothing more than that John Doe could occasionally be found in the same vicinity as [assaulted student] and that he would stare at her. These are not claims of sexual harassment actionable under Title IX."). To hold otherwise would essentially require schools to immediately expel anyone accused of sexual misconduct, lest the school run the risk that the two students may encounter each other while charges are pending. *But see Davis*, 526 U.S. at 648 (holding that there is no obligation to expel students accused of sexual assault).

2.    <u>Plaintiff Pleads No Facts Showing that MSU's Response to Her</u>
<u>Claims Amounts to Deliberate Indifference Which Caused Her to Suffer</u>
<u>Additional Harassment.</u>

Plaintiff admits that MSU took action in response to her claim of assault by investigating her complaint and ultimately finding Mumphery responsible.  (PageID.5-6 at ¶¶ 29-30, PageID.9 at ¶ 50).  And, importantly, Plaintiff does not allege that she had any further contact with Mumphery, much less that she experienced additional harassment, after MSU was put on notice of the alleged assault.  Because there was no ongoing harassment at the time MSU learned of the past assault, MSU did not subject Plaintiff to discrimination, and her Title IX claim must be dismissed.  *M.D.,* 709 F. App'x at 778.

Plaintiff alleges only that she feared she would see Mumphery on campus (PageID.6 at ¶ 35, PageID.10 at ¶ 62).  This is insufficient, particularly where she pleads that Mumphery was no longer even a student at MSU.  *See M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, at *21-22 (W.D. Ky. Jan. 27, 2017) (school not liable for its "lack of remedial measures" in response to plaintiff's report that she was suffering from "psychological harm" due to the respondent's "mere presence" on campus), *aff'd*, 709 F. App'x 775 (6th Cir. 2017); *Ha v. Northwestern Univ.*, No. 14-cv-00895, 2014 U.S. Dist. LEXIS 160046, at *7-8 (N.D. Ill. Nov. 13, 2014) ("[O]ccasional glimpse of [harasser] on the campus" and "claims that knowledge of [harasser's] presence on the campus caused [plaintiff] considerable grief" are not actionable under Title IX); *see also Pahssen*, 668 F.3d at 364 (school not liable even if harassment continues if it did not have "actual knowledge that its efforts to remediate [were] ineffective"); *Stiles*, 2016 U.S. App. LEXIS 5595, at *16 (finding no deliberate indifference where school took action, even if the action did not fully eliminate the ongoing harassment).

Unable to plead further harassment, Plaintiff's allegations relate to particular remedial demands that she did not receive, which are not actionable under *Davis*. Plaintiff admits that she was provided with a "school visa" for academic accommodations (PageID.8 at ¶¶ 43-44), but alleges she was not offered a no-contact order, no-trespass order, or housing or class changes. (PageID.6-7 at ¶¶ 36, 38). Yet, Plaintiff alleges no facts suggesting she ever requested such measures or facts supporting the need for any such measures – she does not allege that she shared housing or classes with Mumphery. To the contrary, she alleges that he was no longer on campus after the fall 2014 football season. (PageID.4 at ¶ 20).

Plaintiff also claims she was not offered financial assistance for counseling. (PageID.6 at ¶ 36). Even if MSU had refused to provide Plaintiff with counseling (which it did not), failure to provide counseling is not actionable under Title IX. *See Hazley v. Monroe County Bd. of Ed.,* No. 08-0142-WS-B, 2008 U.S. Dist. LEXIS 102283 at *9 (S.D. Ala. Dec. 17, 2008) ("[T]he plaintiffs have offered, and the Court has discovered, no authority for the proposition that a defendant has any duty under Title IX to offer counseling to a student victim of teacher sexual harassment."); *see also Romero v. City of New York*, 839 F. Supp. 2d 588, 613 (E.D.N.Y. 2012) (finding that, even if the parent of a minor student asserting a Title IX claim had requested counseling services, "the failure to provide services, by itself, is not sufficient to constitute 'an official decision by the recipient not to remedy the violation'") (citing *Gebser*, 524 U.S. at 290)).

Finally, Plaintiff alleges that MSU's investigation took almost six months, which was longer than MSU's policy to complete investigations within 90 days. (PageID.6 at ¶ 30). This allegation sounds in negligence, not deliberate indifference. *See, e.g., Oden*, 440 F.3d at 1089 (finding nine-month delay not deliberately indifferent, even if negligent and in violation of

-15-

school's own policy); *Sanches*, 647 F.3d at 169-70 ("Title IX does not require flawless investigations or perfect solutions," and "[a] district's 'failure to comply with [its] regulations . . . does not establish the requisite . . . deliberate indifference.'"); *Facchetti*, 175 F. Supp. 3d at 637 (stating that whether a college's response was "reasonable or proper . . . is not the correct standard" under Title IX, it must have been "clearly unreasonable" to trigger liability); *see also Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951, 973 (N.D. Okla. Apr. 15, 2016) (granting summary judgment despite evidence of potential missteps in the process because "[t]he inquiry is not whether [the university] could have done better; it is whether [the university] acted with deliberate indifference to its Title IX obligations when [plaintiff] reported rape."). While the process took longer than Plaintiff may have preferred, it was not deliberately indifferent. And since there was no ongoing harassment during the investigation, any delay did not subject Plaintiff to gender discrimination.

Although MSU did, in fact, provide Plaintiff with assistance, she cannot sue MSU for damages based on her claim that it did not provide a particular "remedy" to harassment committed not by the school, but by someone else. *See Vance*, 231 F.3d at 260 (stating "[v]ictims do not have a right to particular remedial demands" under Title IX). While a school may not sit by and watch students sexually harass one another, *Davis* expressly **rejected** the argument that Plaintiffs proffer here – that a University has an obligation to remedy the effects of past harassment. The four Justices who dissented in *Davis* argued that the majority was creating just such a requirement: "Rather than beginning with the language of Title IX itself, the majority begins with our decision in *Gebser* and appears to discover there a sweeping legal duty – divorced from agency principles – for schools to remedy third-party discrimination against students." 526 U.S. at 668 (Kennedy, J., dissenting). But the five-Justice majority repeatedly

-16-

pushed back – likely in an effort to secure the needed fifth vote to gain a majority – making it crystal clear that the decision was imposing no such duty:  "The dissent consistently mischaracterizes this standard to require funding recipients to 'remedy' peer harassment . . . and to 'ensure that . . . students conform their conduct to' certain rules . . . . Title IX imposes no such requirements."  *Id.* at 648.  The majority likewise emphasized that "the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands. . . . In fact, as we have previously noted, courts should refrain from second guessing the disciplinary decisions made by school administrators."  *Id.*  Finally, the majority cautioned: "We trust that the dissent's characterization of our opinion will not mislead courts to impose more sweeping liability than we read Title IX to require."  *Id.* at 652.  This Court should heed that warning, and refuse Plaintiffs' invitation to expand *Davis* into a drastically broader cause of action than intended.

   **B.     Plaintiff Pleads No Facts Plausibly Suggesting that MSU Engaged in a
            Custom or Practice of Gender Discrimination.**

   The Complaint contains a handful of paragraphs alleging that MSU had a "custom and practice" of "discourag[ing] and dissuad[ing] students who had been sexually assaulted" from pursuing complaints, particularly against "male athletes," which allegedly led to disparate treatment and a disparate impact on female students.  (*See* PageID.12-13 at ¶¶ 72-73; *see also* PageID.11 at ¶¶ 64-66).  These are nothing more than conclusory allegations of sex-based animus of the kind that courts routinely dismiss under *Twombly*.  *See, e.g., Schaumleffel v. Muskingum Univ.,* No. 2:17-cv-463, 2018 U.S. Dist. LEXIS 36350, at *39-40 (S.D. Ohio Mar. 6, 2018) (dismissing Title IX claim where plaintiff merely alleged a "pattern and practice" of gender discrimination at the university without pleading any facts to make such an allegation plausible); *Doe v. Denison Univ.*, No. 2:16-cv-143, 2017 U.S. Dist. LEXIS 53168, at *32 (S.D.

Ohio Mar. 30, 2017) (same);  *see also Doe v. Univ. of Ala. in Huntsville*, 177 F. Supp. 3d 1380,

1398 (N.D. Ala. 2015) (stating in § 1983 discrimination claim that "[m]erely mouthing the

buzzwords like 'pattern and practice' . . . in a complaint does not satisfy minimum pleading

requirements because it represents a legal conclusion, and such conclusory labels are not credited

for Rule 12(b)(6) purposes").

Moreover, Plaintiff's own case does not fit the "pattern" she alleges.  She does not

– and cannot – allege that anyone at MSU made any comments to her or otherwise discouraged

her from pursuing her complaint against Mumphery either because she is female or he is male.

To the contrary, she alleges that she ***did*** report Mumphery, that MSU ***did*** investigate her

complaint and that MSU ***did*** sanction Mumphery, which belies her claim that MSU provides

"preferential treatment to male athletes."  (PageID.12-13 at ¶ 72).[4]

Nor does she allege any facts about how MSU handled any other cases which

gives rise to a plausible claim that MSU engaged in a pattern of suppressing such complaints.

Her allegation, upon information and belief, that MSU never found a sexual harassment violation

prior to 2012 (PageID.11 at ¶ 66) is completely baseless.  And even if it were true, it does it

establish anything with respect to bias against females.  At most, Plaintiff alleges a bias against

all students who report sexual misconduct.  *Cf. Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778

(S.D. Ohio 2015) ("Demonstrating that a university official is biased in favor of the alleged

---

[4] Underscoring the conclusory nature of Plaintiff's allegation is the fact that Mumphery has filed a lawsuit in this court making the exact opposite claim – that "Michigan State has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of misconduct" and "particularly male athletes . . . ."  *Mumphery v. Michigan State Univ.*, No. 1:18-cv-00576, PageID.48 at ¶¶ 266, 268.  It simply cannot be that either side to a student conduct case can survive a motion to dismiss by just including boilerplate allegations that the result must have been the result of gender bias.  Otherwise, the federal courts will regularly find themselves serving as a court of appeal from internal student disciplinary proceedings.

victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.").

This "disparate impact theory" is not cognizable under Title IX.  By her own pleading, Plaintiff alleges that "students who had been sexually assaulted" are disadvantaged (PageID.12 at ¶ 72), which can mean either female or male students.  Both on its face and in practice, MSU's sexual misconduct policy is gender-neutral.  That women may be more likely to experience and report sexual assault against men does not mean that MSU's policy favors men. Indeed, "[m]ost courts have held that Title IX does not authorize disparate impact claims because it imports Title VI's limitation that plaintiffs may only bring private suits to redress ***intentional discrimination***."  *Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 U.S. Dist. LEXIS 94510, at *42 (W.D. Tex. June 20, 2017) (emphasis in original); *see Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) ("Plaintiffs may not assert Title IX discrimination claims premised upon a disparate-impact theory."); *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 361-62 (S.D.N.Y. 2017) ("[C]ourts have held that a private right of action based on the alleged disparate impact of a policy is not cognizable under Title IX."); *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 732 (E.D. Va. 2015) ("It follows that if Title VI does not provide for disparate impact claims then neither does Title IX."); *Tsuruta v. Augustana Univ.*, No. 4:15-CV-04150-KES, 2015 U.S. Dist. LEXIS 136796, at *9 (D.S.D. Oct. 7, 2015) (agreeing with "reasoning of those courts that have held that, post-*Sandoval*, a claimant cannot bring a disparate impact cause of action under Title IX) (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)).

-19-

## V.    RELIEF

For the foregoing reasons, MSU respectfully requests that the Court dismiss

Plaintiff's Complaint for failure to state a claim upon which relief can be granted.


Date:  July 10, 2018                          Respectfully submitted,

                                              s/ Michael E. Baughman

                                              _____
                                              Michael E. Baughman, Esq.
                                              Attorney I.D. No. 78690
                                              PEPPER HAMILTON LLP
                                              Kristin H. Jones, Esq.
                                              Attorney I.D. No. 85725
                                              3000 Two Logan Square
                                              Eighteenth & Arch Streets
                                              Philadelphia, PA  19103-2799
                                              (215) 981-4000
                                              baughmam@pepperlaw.com
                                              joneskh@pepperlaw.com

                                              Matthew J. Lund, Esq. (P48632)
                                              PEPPER HAMILTON LLP
                                              4000 Town Center, Suite 1800
                                              Southfield, Michigan 48075
                                              (248) 359-7370
                                              lundm@pepperlaw.com

                                              *Attorneys for Defendant Michigan State Univ.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 10th day of July, 2018, I served the foregoing Defendant

Michigan State University's Motion to Dismiss Plaintiff's Complaint and Memorandum of Law

in Support, via electronic mail and First Class Mail, upon the following counsel of record:

> Karen Truszkowski, Esq. (P56929)
> Temperance Legal Group
> PLLC 503 Mall Court #131
> Lansing, MI 48912
> 1-844-534-2560
> Karen@temperancelegalgroup.com
>
> Julie A. Jacot, Esq.
> Jacot Law PLLC
> 1044 N. Irish Road, Suite A
> Davidson, MI 48423
> 810-653-9526
> juliejacotlaw@gmail.com
>
> *Attorneys for Plaintiff*

> s/ Michael E. Baughman
>
> _____
> Michael E. Baughman, Esq.
> Attorney I.D. No. 78690
> baughmam@pepperlaw.com
> PEPPER HAMILTON LLP
> 3000 Two Logan Square
> Eighteenth & Arch Streets
> Philadelphia, PA  19103-2799
> (215) 981-4000